# UNITED STATES DISTRICT COURT

### for the

## Middle District of North Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| CHAKERA ALEXANDRIA MANGUM | ) | Case No. 1:20MJ367-1 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**FILED**
in the Middle District of
North Carolina

December 16, 2020
3:59 pm

Clerk, US District Court
By: _____dmk_____

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 15, 2020_____ in the county of _____Durham_____ in the _____Middle_____ District of _____North Carolina_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1001(a)(2) | False Statement |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Shaylin Laure

☑ Continued on the attached sheet.

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

_____/s/ Shaylin Laure_____
*Complainant's signature*

_____Shaylin Laure, FBI Special Agent_____
*Printed name and title*

Date: ___12/16/2020   3:05pm___

_____Joe L. Webster_____
*Judge's signature*

City and state: ___Durham, North Carolina___

_____Joe L. Webster, U.S. Magistrate Judge_____
*Printed name and title*

I, Shaylin Laure, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

<u>Affiant Background</u>

1.      I am a Special Agent for the Department of Justice, Federal Bureau of Investigation (DOJ/FBI). Thus, I am a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General. As such, I am empowered to conduct investigations of, and to make arrests for, violations of federal law.

2.      I am currently assigned to the Raleigh/Durham Safe Streets Task Force (RDSSTF) of the Charlotte field office. As part of my duties, I am responsible for the investigation of violations of Federal laws, including those pertaining to violent street gangs and narcotics distribution. Prior to my employment with the FBI, I worked as a deputy for the Kent County Sheriff's Office in Grand Rapids, Michigan from 2014 through 2019. Since December 6, 2019, I have conducted and participated in investigations involving physical surveillance, the execution of search warrants and the execution of arrest warrants. These investigations have led to multiple arrests of individuals involved in illegal activity, firearms violations, and criminal street gangs in Durham, North Carolina.

1

<u>Introduction</u>

3.    This affidavit is made in support of a complaint against CHAKERA ALEXANDRIA MANGUM (hereinafter "MANGUM") of Durham, North Carolina, charging that on November 15, 2020, MANGUM committed the following federal offense: false statement, in violation of Title 18, United States Code, Section 1001(a)(2).

<u>Background of Gang Investigation</u>

4.    The RDSSTF is currently investigating the violent non-traditional neighborhood-based criminal enterprise (gang) known as the "O-Block," and its affiliates, known as "8AM," the Southside Nine Trey Gangster (NTG) Bloods, and the Bentwood NTG Bloods, which are responsible for a significant portion of the violent crime in the Durham, North Carolina area. O-Block members and their affiliates are also involved in firearms violations and drug distribution activities.

5.    O-Block was formed in a Durham public housing complex adjacent to a Food Lion store (colloquially dubbed "FL") after the August 2017 shooting death of Kyle Fisher, also known as "O," in order to retaliate against the Eight Trey Gangster (ETG) Crips affiliated with the Oxford Manor public housing complex, (commonly referred to as "Braggtown" and "Bragg") who were suspected of murdering Fisher. Since Fisher's death, the Braggtown ETG Crips

2

have been involved in a violent feud with O-Block, resulting in numerous shootings and homicides.

<u>Identification of O-Block Gang Member Jerry Harris, also known as "JRocc"</u>

6.     I am familiar with JERRY LAMONT HARRIS, also known as JROCC, date of birth October 16, 1994 (hereinafter HARRIS). Law enforcement databases show that he is an O-Block gang member and has been identified as a suspect in gang-related shootings that occurred in 2020 in Durham, North Carolina. HARRIS was also convicted on January 26, 2017, in the United States District Court for the Middle District of North Carolina, of felon in possession of a firearm, and sentenced to a custodial term of forty-eight months.

7.     On April 18, 2020, HARRIS appeared in a video posted to the Instagram account "drizzy_fuckitup," associated with O-Block gang member Deondre Myers, also known as "Dre," also known as "Drizzy." This video showed several O-Block and 8AM gang members, including HARRIS, in a parking lot. Myers identified the gathered gang members as shooters during the video. Myers stated, "Yo a whole lotta gang shit man. Whole lot of 8 [referring to 8AM, which is an affiliate of O-Block], O [O-Block] shit man. Top shots and gun gottas bitch. Somebody might die today." As the video ended, someone was heard in the background stating, "Delete that shit, bro." Law enforcement saw this video.

## An Off-Duty Sheriff's Deputy is Shot

8.     On November 14, 2020, at approximately 10:15 a.m., a deputy with the Durham County Sheriff's Office (DCSO) (hereinafter referred to as the "victim") was driving his personal vehicle west on Highway 98 in Durham. He stopped at the traffic light at Highway 98 and North Mineral Springs Road.

9.     While parked at the intersection, a white Hyundai Sonata pulled up to the left (driver's side) of the victim's vehicle. The front passenger side window of the Hyundai was lowered and, when the light turned green, the Sonata's front passenger began to shoot at the victim. The victim turned north on Mineral Springs Road to avoid the gunfire, while the suspect vehicle proceeded west on Highway 98. This assault was captured on the security camera systems of several local businesses.

10.    The victim, having distanced himself from the scene, contacted 911 and reported that he had been shot. The victim was transported to the hospital with a bullet wound to his shoulder.

11.    The crime scene was processed and two 9mm spent shell casings were recovered from the intersection.

## The Suspect Vehicle is Recovered

12.    At approximately 3:20 p.m. that same day, a white Hyundai Sonata, North Carolina registration HHW6576, was located at the dead end of Contravest Parkway in Durham. The vehicle was abandoned at the end of the

road with a bullet hole in the front passenger side door. The bullet hole damage in the passenger door indicated that the projectile had been fired from inside of the vehicle with the round exiting out of the passenger door. This vehicle matched the description of the suspect vehicle, as seen in the surveillance videos. Law enforcement searched the vehicle and recovered two .40 caliber spent shell casings in the windshield by the wipers and one .40 caliber spent shell casing inside of the vehicle. Forensic examiners recovered fingerprints from inside of the car.

13.    Fingerprint examination revealed that of the prints recovered from the Hyundai, certain prints matched those on record for HARRIS; the remainder could not be identified by the latent print examiner.

<u>Harris is Identified as the Driver of the Suspect Vehicle</u>

14.    Law enforcement learned that the white Hyundai Sonata, North Carolina registration HHW6576, was registered to a family member of HARRIS, hereinafter referred to as D.H. Investigators contacted a family member of D.H., who provided D.H.'s telephone number. The family member explained that D.H. was the owner of the white Hyundai Sonata, but HARRIS was the operator of it.

15.    Investigators later interviewed D.H., who admitted that she provided her vehicle to HARRIS and that he told her that he shot the victim. Specifically, HARRIS told D.H. that he shot the deputy, but explained that he

was not targeting him. He thought the victim was a rival gang member he was "beefing" (feuding) with.

16.     On November 14, 2020, a pen register was authorized in the Superior Court of Durham County on telephone number xxx-xxx-6348, associated with HARRIS.[1]

17.     Through forensic examination of the pen register data for HARRIS's telephone number, agents determined that the cellular phone was utilizing the cellular tower that provided service to the area of the shooting at the time of the incident.

18.     Agents further determined that HARRIS was associated with CHAKERA ALEXANDRIA MANGUM, who resides at 2812 Sagebrush Lane, Durham, North Carolina. A review of law enforcement databases revealed that MANGUM had a Dodge Challenger, North Carolina registration HKV2420, registered[2] to her at this same address.

---

[1] HARRIS published this telephone number on social media to several associates. Additionally, HARRIS, who is currently on federal supervised release, provided this telephone number to his supervising federal probation officer. Agents confirmed that the probation officer communicated with HARRIS using this telephone number.

[2] On October 30, 2020, the Durham Police Department saw a Dodge Challenger leaving a gas station at a high rate of speed and driving erratically. The officer stopped the Challenger, and the driver, identified as J.H., explained to the officer that he was at the store and a rival gang member looked like he was pulling a gun on him.

## Harris's Use of Mangum's Dodge Challenger

19.     On November 14, 2020, while conducting surveillance at 2812 Sagebrush Lane, investigators saw a dark blue Dodge Challenger driving erratically through the adjacent neighborhood. Court-authorized geolocation data provided by AT&T indicated that HARRIS's cellular phone was in this neighborhood at the time investigators saw the Challenger. Investigators caught up to the vehicle as it fled the area and verified the registration of HKV2420 (registered to MANGUM). Investigators activated emergency lights and siren and attempted to stop the vehicle. The Challenger fled at a high rate of speed on Miami Boulevard and began driving on the wrong side of the road, turning left onto Angier Avenue. While driving down Angier Avenue, the driver of the Challenger turned his lights off and continued to flee with no headlights. Pursuing investigators lost the Challenger after it turned off of Angier Avenue.

20.     Immediately following the chase of the Dodge Challenger, at approximately 10:18 p.m., HARRIS stopped utilizing telephone number xxx-xxx-6348. Based on training, knowledge, and experience, I believe that

---

In fear for his life, he jumped into the suspect's running car to flee. The officer returned to the convenience store and made contact with MANGUM. She explained that the Challenger belonged to her and that she was with her boyfriend (later determined to be HARRIS). HARRIS had fled the scene and was never interviewed by officers. MANGUM would not provide officers with the name of her boyfriend. The vehicle was returned to MANGUM.

HARRIS was in the Dodge Challenger. Specifically, based on my prior experience investigating gang-related activity, I believe that HARRIS stopped using his cell phone because he correctly assumed that law enforcement was using it to track his location and that this is how they found him in the neighborhood immediately prior to the chase.

Investigators Question Mangum

21.   On November 14, 2020, immediately following the chase of MANGUM's Dodge Challenger, investigators went to 2812 Sagebrush Lane and made contact with MANGUM. Investigators questioned MANGUM about her Dodge Challenger. She explained that her vehicle was currently at a repair shop on Cheek Road and that the only key for the vehicle was with the mechanics.[3] MANGUM could not provide the name of the repair shop or the name of the mechanic who was supposedly working on her vehicle. During this interaction, Task Force Officer (TFO) Gryder warned MANGUM that lying to federal agents during the course of an investigation is a crime. Mangum replied that she understood that it was a crime. TFO Goodwin and Special Agent Harris were present during this conversation and witnessed MANGUM acknowledge this admonishment. MANGUM said she did not know where

---

[3] In the next interview conducted by agents, MANGUM admitted that this was not true.

HARRIS was. Agents then advised MANGUM that they were just in a chase with her Dodge Challenger. They asked again if anyone else had access to the keys to her vehicle. MANGUM again stated that the vehicle was at a repair shop on Cheek Road and that no other key existed.

Identification of Armand Lewis-Langston, also known as "Mondo"

22.     On November 15, 2020, investigators (including myself) returned to 2812 Sagebrush Lane to speak with MANGUM. She consented to be transported to the Durham County Sheriff's Office for an interview. The interview began at approximately 2:00 p.m. and was recorded. MANGUM was advised several times that she was not under arrest and that she was free to leave at any time. At the beginning of the interview, TFO Gryder stated, "Before we go on, I just want to remind you of what we spoke about last night. As you're speaking to a Federal agent about an investigation, it's illegal to lie, so I just want to get that out beforehand." MANGUM nodded in acknowledgement to the admonishment. She admitted at that point that she was not truthful with agents the previous night. MANGUM stated, "'Cause last night, I am going to admit I was not completely honest as far as my car being on Cheek Road." TFO Gryder admonished her again and stated, "Like we spoke about last night, it's illegal to lie to us. Please don't do that because we're having a great conversation."

9

23.     MANGUM then told investigators that on the evening of November 14, 2020, she was supposed to go pick up her car (Challenger) keys. Her boyfriend, HARRIS, told her to meet "Mondo" (known to investigators as ARMAND SAQUAN SUFYAN LEWIS-LANGSTON) to get her car keys. When asked for her boyfriend's name, she stated, "Jared." She claimed to not know his (HARRIS's) name and stated, "I really didn't even ask him his government name."[4] MANGUM stated that before she picked up LEWIS-LANGSTON, she dropped HARRIS off at Southpoint Mall in Durham.

24.     MANGUM explained that she then met LEWIS-LANGSTON and he followed her back to the house on November 14, 2020. While driving her Challenger, LEWIS-LANGSTON saw unmarked law enforcement vehicles and fled. (This would have occurred shortly before 10:18 p.m.) MANGUM insisted that LEWIS-LANGSTON was the only person in the Challenger and HARRIS was not in the car.

---

[4] When agents arrived at her residence that day, they had seen a dry-erase board in the garage with writing on it; they photographed the board. The board read, "100% Loyal to the ones Loyal to you … Chakera Mangum … Jerry Harris aka Jrocc … Love you more and more every day." Based on information described above, MANGUM was aware of HARRIS's first and last name, as well as his nickname, at the time of the agents' questions.

25.   MANGUM further said that she when she spoke to HARRIS the next day (November 15), she told him, "'You know Mondo [LEWIS-LANGSTON] had my car [Dodge Challenger] last night and sent the police on a high-speed chase,' and he [HARRIS] was like, 'Don't worry about that gangbang bullshit.' I said, 'What do you mean? That's my car' … and I was like, 'I have to go to work tomorrow, so you need to be contacting MONDO to get me my car.'" I then asked MANGUM, "Have you heard anything about your car since?" MANGUM replied, "No."

26.   At the end of the interview with MANGUM, TFO Gryder and I walked outside with her so that she could smoke a cigarette while she waited for her father to pick her up. As MANGUM smoked, TFO Gryder asked her several more times if she knew where HARRIS might be or where he had left her vehicle. MANGUM stated each time that she did not know.

27.   After the interview, MANGUM consented in writing to an extraction of the contents of her cell phone.

_____

28.    On November 16, 2020, investigators determined that LEWIS-LANGSTON was using phone number xxx-xxx-3071. This was the same telephone number that LEWIS-LANGSTON provided to his supervising federal probation officer. A pen register was authorized on telephone number xxx-xxx-3071, service provider T-Mobile, later that day.

29.    On December 11, 2020, agents contacted FBI TFO Heinrich, a member of the FBI's Cellular Analysis Survey Team and an expert in cellular analysis. They requested that TFO Heinrich analyze cellular telephone data associated with the telephone numbers of HARRIS, LEWIS-LANGSTON, and MANGUM. Agents provided pertinent locations and times to TFO Heinrich to conduct the analysis. Based on his analysis of the cellular data, Heinrich determined:

  a. On November 14, 2020, LEWIS-LANGSTON's cellular phone was in the vicinity of Airport Boulevard and Interstate 40 from 8:07 p.m. through 10:28 p.m., and not in the vicinity of where the high-speed chase occurred, which concluded shortly before 10:18 p.m.

  b. HARRIS's and MANGUM's cellular phones were in the same vicinity the night of November 14, 2020, up to the point at which

12

agents chased the Challenger, shortly before 10:18 p.m. Their cellular phones were not in the vicinity of Southpoint Mall.

Investigators Review the Contents of Mangum's Cell Phone

30.     Investigators performed an extraction of MANGUM's cellular phone. There, they recovered messages indicating that MANGUM, in an attempt to make contact with HARRIS after the high-speed chase, was speaking with another gang member known to investigators as JOEY BEST,[5] also known as "JOE BLOW." A review of cellular records from both phone numbers belonging to BEST indicated that after the shooting of the deputy, and the chase of the Challenger later that night, HARRIS's cellular phone was in the same vicinity as BEST's cellular phone.

31.     Further, on November 15, 2020, at approximately 4:29 a.m., MANGUM sent an instant message from her Instagram account[6] to BEST's Instagram account,[7] writing, "Just let me know my son good." Based on training, knowledge, and experience, I believe that MANGUM was attempting

---

[5] On November 16, 2020, a confidential informant (CI) provided the telephone number xxx-xxx-8175 for BEST. The CI had recently communicated with BEST at that number. Call detail records also linked that number with known associates of BEST. A pen register was authorized on the telephone number that same day.

[6] MANGUM's Instagram account was identified as *caramel_shoota*.

[7] BEST's Instagram account was identified as *blow_4200*.

to communicate with BEST about HARRIS because MANGUM knew, or assumed, that they were together. At approximately 5:03 a.m., MANGUM viewed the online article entitled "Durham investigators release photos of car used in drive-by shooting of off-duty deputy," posted by WRAL.com.

32.     At approximately 5:20 a.m., MANGUM sent an instant message to HARRIS's Instagram account,[8] writing, "Hit me bae," to which he never replied. Just fifteen minutes later, MANGUM sent an instant message to BEST with her cellular phone number. Four minutes later, MANGUM received a FaceTime call from xxx-xxx-8175, which belonged to BEST. The call lasted approximately five minutes and eleven seconds. MANGUM then immediately created a contact for telephone number xxx-xxx-8175.

33.     At 5:49 a.m., MANGUM received a FaceTime call from BEST's telephone number. The call lasted approximately four minutes and eight seconds. Based on training, knowledge, and experience, I believe that the above-documented evidence, obtained from MANGUM's cellular phone extraction, indicates that she was in communication with HARRIS through BEST's telephone. HARRIS was not utilizing his own cellular phone after the agents chased him the night of November 14, 2020. Further, as described *infra*,

---

[8] HARRIS's Instagram account was identified as *jrocc_flp*.

MANGUM was aware of the location of her Dodge Challenger after communicating with BEST's telephone number.

<u>Mangum's Cell Phone Extraction Demonstrates She Knew the Location of the Dodge Challenger</u>

34.    On November 15, 2020, at approximately 8:13 a.m., MANGUM sent three attachments from her Instagram account to BEST's. A few minutes later, MANGUM received an Instagram message from BEST. Then, beginning at 8:55 a.m., MANGUM began a text message conversation with her father, Johnny Mangum,[9] as reflected below:

       a. 8:55 a.m.: MANGUM – "U up?"

       b. 9:00 a.m.: Johnny – "Yes"

       c. 9:01 a.m.: MANGUM – "I want to go get my car."

       d. 9:04 a.m.: MANGUM – "It's parked by wall town with the keys in it."

       e. 9:10 a.m.: MANGUM – "U gon take me to get it?"

Then, at 9:13 a.m., MANGUM placed an outgoing call to Johnny lasting nine minutes and thirty seconds.

---

[9] Johnny Mangum's telephone number was identified as xxx-xxx-2596. Johnny Mangum provided this telephone number to law enforcement during the course of this investigation.

35.    Based on my training, knowledge, and experience, I believe that through her communication with BEST's phone and Instagram account on the morning of November 15, 2020, MANGUM learned the location of the Dodge Challenger. Minutes after learning the location of her car, MANGUM reached out to her father through text message and asked him to take her to pick up her car from the same area investigators later recovered the car (further described *infra*).

36.    Additionally, on November 15, 2020, at approximately 11:09 a.m., MANGUM received a text message from a contact saved as "Juno," which read, "You got ur car?" MANGUM replied, "No I don't have it its parked in the cut," further showing her knowledge of the location of her car.

37.    Based on the above-mentioned evidence, obtained from MANGUM's cell phone extraction, MANGUM knew where her Dodge Challenger was located, as early as 8:00 a.m. on November 15, 2020. However, later that same day, when asked multiple times by TFO Gryder if she knew where HARRIS might be or where he had left her vehicle, MANGUM said she did not know.

_____

38.    On November 16, 2020, at approximately 6:39 p.m., officers with the Durham Police Department found the 2012 Dodge Challenger SXT, bearing North Carolina registration HKV2420, registered to MANGUM, abandoned on the 1500 block of Edgewater Street.[10] Investigators interviewed multiple residents, all of whom saw the vehicle running and abandoned on Sunday, November 15, 2020. A resident in the 1200 block of Berkeley Street provided investigators with Ring Doorbell camera video that documented the Dodge Challenger driving by the residence at 10:15 p.m. on Saturday, November 14, 2020.

39.    On November 18, 2020, DCSO deputies executed a search warrant on the Dodge Challenger and recovered the following:

> a.  Paperwork with the name "JERRY HARRIS, Jr." found in the glove compartment box;
>
> b.  One .40 caliber shell casing, found on the driver side floorboard;
>
> c.  One .40 caliber shell casing, found on the right rear side;

---

[10] The area mentioned in MANGUM's instant message at 9:04 am, "Wall Town," describes a location in Durham, North Carolina, that encompasses an area close to Duke University's East Campus and neighboring Northgate Mall. The 1500 block of Edgewater Lane falls within the "Wall Town" area.

17

d. One .40 caliber shell casing, found on left rear seat; and

e. Numerous touch DNA samples, fingerprints, and one hair sample.

<u>Conclusion</u>

40.    Agents with the FBI had reason to believe that the shooting that took place on November 14, 2020 was gang-related and committed by a felon, thereby implicating numerous federal crimes, including 18 U.S.C. § 1959, violent crime in aid of racketeering and 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

41.    And, after being advised of the penalties of lying to federal agents regarding this ongoing investigation, MANGUM made the following false statements:

a. On November 14, 2020, she stated that her Dodge Challenger was at an unknown mechanic's shop on Cheek Road, when she well knew it was not;

b. On November 15, 2020, she stated that HARRIS had been dropped off vicinity of Southpoint Mall when the Dodge Challenger got into a high-speed chase with investigators, when she well knew he was not, as evidenced by the fact that both hers and HARRIS's cell phones were together and not in that vicinity immediately prior to that time; and

18

c. On November 15, 2020, she stated that she did not know the whereabouts of her Dodge Challenger, when she well did know, as evidenced by the text messages she sent her father earlier that morning identifying its specific location.

42.     Based on the facts set forth above, I respectfully submit that there is probable cause to believe that on or about November 15, 2020, in Durham County, CHAKERA ALEXANDRIA MANGUM, in a matter within the jurisdiction of the FBI, an agency within the United States Department of Justice, a department of the executive branch of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, that is, she represented to a Task Force Officer and a Special Agent with the FBI that she did not know the location of evidence material to an ongoing investigation, when she then and there well knew the location of that evidence, in violation of Title 18, United States Code, Section 1001(a)(2).

Respectfully submitted,

/s/ Shaylin Laure

Federal Bureau of Investigation
United States Department of Justice

Dated: December 16, 2020    3:05pm

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Joe L. Webster
United States Magistrate Judge
Middle District of North Carolina

20